UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

CHARLES TURNER, :

    Petitioner :

    v. : CIVIL ACTION NO. 3:15-2040

COMM OF PA BOARD OF : (Judge Mannion)
PROBATION AND PAROLE, et al.,

    Respondents :

## MEMORANDUM

Petitioner, Charles Turner, an inmate currently confined in the State Correctional Institution, Dallas, Pennsylvania, filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. §2254. Petitioner claims the Pennsylvania Board of Probation and Parole (the Board) violated his due process rights by revoking his unexecuted grant of parole and then denying him parole for "unconstitutional reasons." (Doc. 1, petition). The petition is ripe for disposition, and for the following reasons, the Court will dismiss the petition.

I. **Background**

On January 21, 1997, Petitioner was charged with two counts of Criminal Solicitation to Commit Murder, one count of Criminal Solicitation to

Retaliate Against Witness or Victims, two counts of Criminal Solicitation to commit Harassment and Stalking, and two counts of Criminal Solicitation to commit Aggravated Assault. (Doc. 11-1 at 3, Criminal Complaint).

On July 8, 1997, a jury found Petitioner guilty of two counts of Criminal Solicitation to Commit Murder, one count of Criminal Solicitation to Retaliate Against Witness or Victims, and two counts of Criminal Solicitation to commit Aggravated Assault. (Doc. 11-1 at 12, Sentencing Hearing Transcript).

On August 12, 1997, Petitioner was sentenced to an aggregate term of 15 to 30 years imprisonment. Id. Petitioner's maximum sentence will expire on August 12, 2027. (Doc. 11-1 at 23, Sentence Status Summary).

On May 16, 2012, Turner was reviewed by the Board and was denied parole. (Doc. 11-1 at 27, Notice of Board Decision).

On October 24, 2013, the Board granted Turner parole. (Doc. 11-1 at 30, Notice of Board Decision). The Board's Notice of Decision advised Petitioner that its decision:

> WILL NOT TAKE EFFECT UNTIL YOU SIGNED THE CONDITIONS (PBPP-11), AND THE RELEASE ORDERS (PBPP-10) HAVE BEEN ISSUED. YOU REMAIN UNDER THE JURISDICTION AND CONTROL OF THE DEPARTMENT OF CORRECTIONS UNTIL YOU HAVE SIGNED THE PBPP-11, AND THE PBPP-10 HAS BEEN ISSUED.

Id.

Subsequent to the Board's grant of parole, the Board received the

following letter from the District Attorney of Cambria County:

> My purpose for writing to you today concerns inmate Charles Turner who, in 1997, was convicted in the Cambria County Court of Common Pleas for Solicitation to Commit Murder and Solicitation to Retaliate Against a Victim or Witness. On October 24, 2013, the Board had recommended Mr. Turner for parole for several reasons including "Acceptance of Responsibility for the Offense(s) Committed." I fully appreciate your office's discretionary authority to grant parole. However, I believe the facts provided to your office in consideration of your decision are false. Mr. Turner has never accepted responsibility for his actions and this statement is objectively verifiable as noted below.
>
> Over the course of the last fifteen years, Mr. Turner has never ceased his attempts to overturn his conviction through the use of multiple frivolous collateral appeals. The latest appeal was filed on March 6, 2013. In that appeal, which is attached, he asserted that he was innocent of the crimes and his perceived innocence should serve as a base to equitably toll the statute of limitations of the federal petition for writ of *habeas corpus.*
>
> Most of Mr. Turner's voluminous appellate pleadings claims that his trial counsel was ineffective and that he is innocent of the crimes. Additionally, he continues to frivolously claim that the Commonwealth failed to turn over audio cassettes to him. The audio cassettes were, of course, turned over in discovery and disseminated by his trial counsel. At trial, the Commonwealth presented to the jury audio recordings of Mr. Turner's request made to a fellow prisoner to kill the victim in this case.
>
> Now, on federal collateral appeal, as recently as November 4, 2013, (see attached "Petitioner's Response to Commonwealth of Pennsylvania's Motion to Dismiss as Untimely the Petition for Writ of Habeas Corpus"), Mr. Turner has claimed that he is innocent of the crimes (which were recorded by investigators).
>
> It appears to the Office of the District Attorney that Mr. Turner is

> claiming before the Board of Probation and Parole that he is remorseful for the crimes. During the same time period, however, he claimed, before the Honorable Keith A. Pesto, the federal magistrate [judge] in Johnstown, PA, that he is actually innocent and that this innocence should serve as a basis to allow reversal of his conviction. This type of two-faced pleading is legally unsupportable on estoppel grounds. More importantly, it is evidence that Mr. Turner will lie under oath.
>
> I appreciate your time and consideration in this regard and I hope that this letter and the attachments will help you reconsider paroling Mr. Turner on the grounds that he has "accepted responsibility for the offenses committed."

(Doc. 31 at 11).

On December 4, 2013, the Board received the following letter from the Honorable Timothy P. Creany, Cambria County Court of Common Pleas:

> I was recently advised by the victim in the above captioned matter that the defendant was scheduled for release following a hearing by the Board of Probation and Parole. I did not receive notice, but would I have, I would have objected to this release due to the nature of the crime and Mr. Turner's ongoing evidence of lack of remorse and refusal to take responsibility for his action, as evidenced by the plethora of filings we have received over the years.

(Doc. 31 at 14).

On December 6, 2013, the Board rescinded its October 24, 2013, grant of parole "due to receipt of new information." (Doc. 11-1 at 34, Notice of Board Decision). Petitioner was informed that he would be reviewed again in or after October, 2014.

4

On December 2, 2014, the Board refused Turner parole. (Doc. 11-1 at 36, Notice of Board Decision). The reasons for the Board's decision included the following:

> REPORTS, EVALUATIONS AND ASSESSMENTS/LEVEL OF RISK INDICATES YOUR RISK TO THE COMMUNITY.
>
> YOUR MINIMIZATION/DENIAL OF THE NATURE AND CIRCUMSTANCES OF THE OFFENSE(S) COMMITTED.
>
> YOUR REFUSAL TO ACCEPT RESPONSIBILITY FOR THE OFFENSE(S) COMMITTED.
>
> YOUR LACK OF REMORSE FOR THE OFFENSE(S) COMMITTED.

Id. Petitioner was informed that he would be reviewed again for parole, on, or after November, 2016. Petitioner did not file an action in the Commonwealth Court of Pennsylvania challenging the December 6, 2013, decision rescinding the grant of parole or the December 2, 2014, parole denial.

On October 20, 2015, Petitioner filed the above captioned action, asserting that members of the Board violated his Fourteenth Amendment right when rescinding his grant of parole and denying him parole. (Doc. 1, petition).

On June 14, 2016, the Board denied Turner parole for the following reasons:

> REPORTS, EVALUATIONS AND ASSESSMENTS/LEVEL OF RISK INDICATES YOUR RISK TO THE COMMUNITY.

5

> YOUR FAILURE TO DEMONSTRATE MOTIVATION FOR SUCCESS.
>
> YOUR MINIMIZATION/DENIAL OF THE NATURE AND CIRCUMSTANCES OF THE OFFENSE(S) COMMITTED.
>
> YOUR LACK OF REMORSE FOR THE OFFENSE(S) COMMITTED.
>
> THE NEGATIVE RECOMMENDATION MADE BY THE TRIAL JUDGE.
>
> THE NEGATIVE RECOMMENDATION MADE BY THE PROSECUTING ATTORNEY.

(Doc. 22-1 at 2).

Petitioner was most recently reviewed for parole on May 5, 2017. (Doc. 31 at 3). The Board denied Turner parole with the following decision:

> FOLLOWING AN INTERVIEW WITH YOU AND A REVIEW OF YOUR FILE, AND HAVING CONSIDERED ALL MATTERS REQUIRED PURSUANT TO THE BOARD OF PROBATION AND PAROLE, IN THE EXERCISE OF ITS DISCRETION, HAS DETERMINED AT THIS TIME THAT: YOU ARE DENIED PAROLE/REPAROLE. THE REASONS FOR THE BOARD'S DECISION INCLUDE THE FOLLOWING:
>
> REPORTS, EVALUATIONS AND ASSESSMENTS/LEVEL OF RISK INDICATES YOUR RISK TO THE COMMUNITY.
>
> YOUR LACK OF REMORSE FOR THE OFFENSE(S) COMMITTED.
>
> YOU ARE TO BE REVIEWED IN OR AFTER MAY 2019.
>
> AT YOUR NEXT INTERVIEW, THE BOARD WILL REVIEW

> YOUR FILE AND CONSIDER:
>
> WHETHER YOU HAVE MAINTAINED A FAVORABLE RECOMMENDATION FOR PAROLE FROM THE DEPARTMENT OF CORRECTIONS.
>
> WHETHER YOU HAVE MAINTAINED A CLEAR CONDUCT RECORD.
>
> WHETHER YOU HAVE COMPLETED THE DEPARTMENT OF CORRECTIONS PRESCRIPTIVE PROGRAM(S)
>
> YOU MAY FILE AN APPLICATION FOR PAROLE/REPAROLE NO SOONER THAN 1 YEAR AFTER THE DATE OF THE LAST DECISION DENYING PAROLE/REPAROLE WAS RECORDED.

Id.

## II. Discussion

### A. Exhaustion

The federal habeas statute typically "requires that prisoners exhaust their claims in state court before seeking relief in federal courts." Slutzker v. Johnson, 393 F.3d 373, 379 (3d Cir. 2004) (citing to 28 U.S.C. §2254(b)(1)(A)). In Defoy v. McCullough, 393 F.3d 439, 445 (3d Cir. 2005), the United States Court of Appeals for the Third Circuit held that, aside from litigating an ex post facto claim, Pennsylvania law does not provide a mechanism by which a prisoner can challenge a parole denial. See also

Roman v. DiGuglielmo, 675 F.3d 204, 209 (3d Cir. 2012) ("[T]he State argues that Defoy no longer controls because Commonwealth Courts since that decision have adjudicated mandamus actions involving parole denials by the Board and have considered constitutional claims other than ex post facto claims.... [T]o the extent there has been any shift in Pennsylvania law, we cannot comfortable say that it is clear enough to alter our decision in Defoy.") Therefore, the Petitioner may be exempt from the exhaustion requirement with respect to all of his claims. However, because a federal court "may bypass the exhaustion issue altogether should [it] decide that the petitioner's habeas claim fails on the merits[,]" and since the Petitioner's claims plainly have no merit, this Court "need not address the issue of exhaustion" with respect to his claims. Roman, 675 F.3d at 209 (citing, *inter alia*, 28 U.S.C. §2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.")).[1]

---

[1] The Respondents note that the Board routinely defends challenges to parole refusals filed by Pennsylvania inmates in the Commonwealth Court of Pennsylvania for claims other than ex post facto claims. (Doc. 11-2 at 2). Because Defoy is controlling Third Circuit precedent, the Respondents explain, they will not challenge that holding in this Court. Id. However, they preserve the issue of exhaustion in the event that there is appellate review and state that the Petitioner's claims should be dismissed because he did not

8

## B. Merits

It is well-settled that "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979). Further, the existence of a state parole system alone does not create a constitutionally-protected interest. Board of Pardons v. Allen, 482 U.S. 369, 373 (1987). Instead a liberty interest for purposes of parole would only arise if the state code requires a parole board to make its decision based upon the existence or absence of a particular factor.

The Pennsylvania Probation and Parole Act does not grant Pennsylvania state prisoners any constitutionally-protected liberty interest in being released on parole or reparole prior to the expiration of their maximum terms.[2] Pennsylvania law unambiguously provides that a prisoner is not

---

present them to the Pennsylvania state courts before filing his federal habeas petition. Id.

[2] See, e.g., McFadden v. Lehman, 968 F. Supp. 1001, 1004 (M.D. Pa. 1997) (Pennsylvania has not created an enforceable liberty interest in parole, rehabilitative pre-release programs, or in therapy programs); Rodgers v. Parole Agent SCI–Frackville, Wech, 916 F. Supp. 474, 476 (E.D.Pa. 1996); McCrery v. Mark, 823 F. Supp. 288 (E.D.Pa. 1993); Rogers v. Pennsylvania Bd. of Probation and Parole, 555 Pa. 285, 724 A.2d 319 (1999) (holding that the grant of parole for Pennsylvania prisoners is nothing more than a

9

entitled to release from prison until the expiration of his maximum sentence.[3]

Nothing in the Pennsylvania Parole Act (or any other provision of Pennsylvania law) requires the Board to release a prisoner on parole prior to the expiration of his maximum term. The Board has complete discretion to determine whether an inmate is sufficiently rehabilitated such that he will be permitted to serve the remainder of his sentence outside the prison walls on parole. Although a prisoner is eligible for parole at the end of his minimum term, nothing in Pennsylvania law or the United States Constitution requires a prisoner to be released at such time.[4] However, the United States Court of

---

possibility; it merely constitutes a favor granted by the state as a matter of grace and mercy); Tubbs v. Pennsylvania Bd. of Probation and Parole, 152 Pa. Cmwlth. 627, 620 A.2d 584, 586 (Pa. Commw. Ct. 1993) ("it is well settled under Pennsylvania law that a prisoner has no constitutionally protected liberty interest in being released from confinement prior to the expiration of his sentenced maximum term ... the [Board] makes each decision on a case by case basis, and prisoners have no guarantees that parole will ever be granted"), appeal denied, 536 Pa. 635, 637 A.2d 295 (Pa. 1993).

[3] A prisoner's sentence is his maximum term. Krantz v. Pennsylvania Bd. of Probation & Parole, 86 Pa. Commw. 38, 41, 483 A.2d 1044, 1047 (1984). The significance of the minimum sentence is that it establishes a parole eligibility date; the only "right" that can be asserted upon serving a minimum sentence is the "right" to apply for parole and to have that application duly considered by the Board. Id.

[4] The existence of a state parole system alone does not create a constitutionally-protected interest. Board of Pardons v. Allen, 482 U.S. 369, 373 (1987).

Appeals for the Third Circuit has held that:

> [E]ven if a state statute does not give rise to a liberty interest in parole release under Greenholtz, once a state institutes a parole system all prisoners have a liberty interest flowing directly from the due process clause in not being denied parole for arbitrary or constitutionally impermissible reasons.

Block v. Potter, 631 F.2d 233, 236 (3d Cir. 1980). Accordingly, even where a state statute grants discretion to the state parole board to condition or completely deny parole, it may not permit "totally arbitrary parole decisions founded on impermissible criteria." Id. Consequently, a federal court may review a decision by a state parole board for an abuse of discretion. Id. Upon such review, relief will only be available if an applicant can show that parole was arbitrarily denied based on some impermissible reason such as "race, religion, or political beliefs," or that the parole board made its determination based on "frivolous criteria with no rational relationship to the purpose of parole . . . ." Id. at 236 n.2.

In Morrissey v. Brewer, 408 U.S. 471 (1972), the United States Supreme Court addressed a habeas petition filed by a state inmate who alleged that he had not received due process during parole revocation procedures. The Court recognized that a federal court should not upset a decision of a state parole board unless the determination is based on

constitutionally impermissible reasons such as race, religion, or ethnicity or rendered in the absence of the following due process protections:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinder as to the evidence relied on and reasons for revoking parole.

Id. at 488-89.

Turner does not allege that he was denied parole on the basis of his race, religion or ethnicity. As previously noted, it has been repeatedly recognized that Pennsylvania state law does not confer its inmates with a legally protected interest in parole eligibility. Consequently, it cannot be concluded that the Board's decisions to deny Tuner parole was based on constitutionally impermissible reasons. To the contrary, the reasons cited are factors that the Board was statutorily required to consider in accordance with the Prisons and Parole Code at 61 Pa C.S. §6135. Those statutory factors include: Petitioner's minimization/denial of the nature and circumstances of the offenses committed, lack of remorse for the offenses committed, as well as reports, evaluations and assessment/level of risk indicating Petitioner is a

risk to the community. Id.

To the extent that Petitioner argues that the Board's 2013 rescission of his grant of parole constitutes a legally cognizable liberty interest, the Supreme Court has held that where state law provides parole authorities complete discretion to rescind a grant of parole prior to release, an inmate's expectation of release on parole is not a constitutionally protected liberty interest. See Jago v. Van Curen, 454 U.S. 14, (1981). Here, because Pennsylvania law provides that the Board may at any time rescind an order granting parole until parole is "executed"—i.e., an inmate is released—Turner had no liberty interest in the pre-execution grant. See Johnson v. Commonwealth, 110 Pa.Cmwlth. 142, 532 A.2d 50, 52 (1987).

Consequently, the petition for writ of habeas corpus will be denied.

III. **Certificate of Appealability**

Section 102 of AEDPA, which is codified at 28 U.S.C. §2253, governs the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. It provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." Where the district court has

13

rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Applying that standard here, jurists of reason would not find it debatable whether Petitioner's claims should be denied. Accordingly, a certificate of appealability is denied.

IV. **Conclusion**

Based on the foregoing discussion, the Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability. An appropriate Order follows.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: February 28, 2018**
O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2015 MEMORANDA\15-2040-01.wpd

14